MICHAEL JAY GREEN AND ASSOCIATES, INC.
MICHAEL JAY GREEN      4451
*- AND -*
LAW OFFICE OF PETER C. HSIEH
PETER C. HSIEH     3204
Davies Pacific Center
841 Bishop Street, Suite 2201
Honolulu, Hawaii  96813
Telephone:  (808) 521-3336
Facsimile:  (808) 566-0347
Email:  michael@michaeljaygreen.com
          hsiehlaw808@gmail.com

Attorneys for Plaintiff
LARS A. BRENNAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| LARS A. BRENNAN, | CIVIL NO. 22-00481 HG-KJM |
| Plaintiff, | FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |
| v. | |
| HAWAIIAN AIRLINES, INC., and HAWAIIAN HOLDINGS, INC., | |
| Defendants. | |

FIRST AMENDED COMPLAINT

Plaintiff LARS A. BRENNAN, by and through his attorneys, Michael Jay

Green and Peter C. Hsieh, for a First Amended Complaint against the above-named

Defendants, alleges and avers as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of the claims against the defendants pursuant to 28 U.S.C. §§ 1331, 1343 and 1367 and pendant jurisdiction of Plaintiff's state claims against the defendants.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because (1) the defendants are corporate residents of the State in this district and (2) a substantial part of the acts, omissions, and/or events giving rise to Plaintiff's injuries and claims occurred in this judicial district.

## PARTIES

3.      Plaintiff LARS A. BRENNAN ("Plaintiff") is, and was at all times relevant herein, a citizen of the United States and resident of Vancouver, Washington.

4.      Defendant HAWAIIAN AIRLINES, INC., is, and was at all relevant times herein, a Delaware corporation and subsidiary of Hawaiian Holdings, Inc., registered and licensed to conduct business in the state of Hawaii.

5.      Defendant HAWAIIAN HOLDINGS, INC. is, and was at all relevant times herein, a Delaware corporation and parent company of Hawaiian Airlines, Inc., registered and licensed to conduct business in the state of Hawaii.

6.      Hawaiian Airlines, Inc., and Hawaiian Holdings, Inc., are hereinafter collectively referred to as "Hawaiian" or "Defendants".

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.     Plaintiff exhausted his administrative remedies by timely filing a charge of religious discrimination and disability discrimination against Hawaiian under Title VII of the Civil Rights Act of 1964 ("Title VII") and Disabilities Act of 1990 ("ADA") with the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC") within 180 days of the discriminatory action. Plaintiff received a Notice of Dismissal and Right to Sue from the EEOC and the HCRC on September 26, 2022, and October 12, 2022, respectively. Plaintiff files this complaint within 90 days of his receipt of the Notices.

## INTRODUCTION

8.     This suit is not about Hawaiian's right to implement a COVID-19 vaccine mandate requiring its employees to get vaccinated. Rather, it is about Hawaiian's failure to carry out the mandate in a lawful and nondiscriminatory manner in accordance with the laws under Title VII and/or ADA.

9.     Not only did Hawaiian resort to coercion and intimidation to force the vaccine mandate down the employees' proverbial throats, Hawaiian trampled on the rights of employees who sought exemptions by denying nearly every application for exemptions regardless of the employee's religious belief or medical reason not to get the vaccine.

3

10.    Worse, after it ended its Vaccine Mandate in September 2022, Hawaiian allowed some unvaccinated employees (most, if not all, with less seniority than Plaintiff) to get their jobs back without penalty while others were told they had to reapply without credit for their seniority.

11.    Plaintiff brings this suit to seek accountability for Hawaiian's unlawful conduct.

FACTUAL ALLEGATIONS

12.    In the last two and a half years since the COVID-19 pandemic, the people of the state of Hawaii saw a world none had ever seen before. The first cases of COVID-19 were identified in China in December 2019. The coronavirus outbreak grew into a global pandemic.

13.    The medical and scientific communities were unprepared and scrambled to find answers. Pharmaceutical companies raced to develop a vaccine. Moderna and Pfizer were first to market with their newly-developed vaccines, followed by Johnson and Johnson. These companies were able to deliver the vaccine in record time, because the U.S. Food and Drug Administration ("FDA") allowed them to accelerate through the testing and approval process.

14.    Ordinarily, after the initial development of the vaccine in the laboratories, all vaccines must go through three phases of clinical trials to make sure they are safe and effective. The FDA then reviews the findings from the clinical

trials before deciding whether grant authorization or approval for its use. Normally, the vaccine clinical trials have to go through three phases, which are performed one at a time, which could take months to complete.

15.    As a result of the short-cut granted by the FDA, what normally would take years to approve took just a few months. The speed by which the vaccines were developed and delivered caused widespread concerns regarding the vaccines' safety and efficacy and possible side effects. In short, many people were skeptical and refused to get the COVID-19 vaccination.

16.    The first doses of COVID-19 vaccine administered in Hawaii on December 14, 2020. The pandemic made people fearful and paranoid. The fear of infection worsened emotion, cognition, and behavioral responses. That fear was heightened by constant, relentless barrage of daily news reports of infection and death rates.

17.    The state of Hawaii acted on that fear to impose the strictest of prohibitions, mandating a strict 14-day quarantine; social distancing and masking; nightly curfews; travel restrictions, limitations on number of people in restaurants and family gatherings at home; closure of beaches; moratorium on evictions; proof of vaccination; closure of schools; and many other restrictions.

18.    Hawaiian adopted the State's mindset and came up with its own vaccine mandate, ordering its 7,000 employees to take the COVID-19 vaccine, with

termination as a consequence of refusal to vaccinate.

19.     On May 11, 2021, Hawaiian implemented a "COVID-19 vaccination support program" which required its employees to provide proof of vaccination by August 29, 2021, which was later extended to January 4, 2022.

20.     On August 9, 2021 Hawaiian implemented a COVID-19 vaccine mandate requiring all 7,000 of its employees to take the COVID-19 vaccination by November 1, 2021 ("Vaccine Mandate"). The deadline was later extended through January 4, 2022 pursuant to its Transition Period Testing Program ("TPTP"). Under the TPTP, employees who did not get vaccinated as of November 1, 2021, were allowed to continue working through January 4, 2022, but were subjected to a temporary COVID-19 testing protocol, ostensibly to provide unvaccinated employees additional time to evaluate whether to get vaccinated.

21.     A number of Hawaiian employees were taken aback by the Vaccine Mandate who viewed it as harsh and unreasonable, upset that they were being forced to get the vaccination.

22.     Hawaiian attempted to mollify the employees by offering those who refused to get vaccinated an opportunity to take a leave of absence without pay up to 12 months, starting on January 5, 2022 ("12-Month Unpaid LOA").

23.     The 12-Month Unpaid LOA, which Hawaiian euphemistically called "reasonable accommodation", was in reality a suspension without pay.

24.     The 12-Month Unpaid LOA is essentially a "take it or leave it offer" giving Hawaiian employees a Hobson's choice: get vaccinated or get fired.

25.     The folly of Hawaiian's vaccine mandate was driven home when the Fifth Circuit Court of Appeals struck down a similar vaccine mandate by United Airlines, Inc., in *Sambrano v. United Airlines, Inc.*, 2022 U.S. App. LEXIS 4347 ((5th Cir. February 17, 2022). There, the plaintiffs, United Airlines employees, filed for a preliminary injunction to stop United from imposing its vaccine mandate. The district court denied the injunction, and the plaintiffs appealed. The Fifth Circuit reversed the district court's conclusion that plaintiffs had not demonstrated irreparable injury absent an injunction. In concurring in the denial of rehearing *en banc*, Judge James C. Ho stated, poignantly:

> Being placed on indefinite unpaid leave because your employer doesn't like your religious beliefs is obviously an adverse employment action and an actionable claim under Title VII of the Civil Rights Act of 1964. And you've obviously suffered irreparable injury when you're forced to violate your faith in order to get your job back. The injury would be entirely reparable by money damages if it was just about a loss of money. But it's not. It's about a loss of faith. And it's about a crisis of conscience. You're being coerced into sacrificing your faith in order to keep your job. No measure of damages makes sense in this scenario. To keep your job, you must violate your faith. How much money would it take for you to sell out your faith?

*Id.*, 45 F.4th at 879 (5th Cir. 2022).

26.     On January 13, 2022, the U.S. Supreme Court struck down

OSHA's vaccine mandate, stating that the mandate was a "blunt instrument" drawing no "distinctions based on industry or risk of exposure to COVID-19" and that the "universal risk" from COVID-19 is "no different from the day-to-day dangers that all face from crime, air pollution, or any number of communicable diseases[] . . . ." *National Federation of Independent Business, et al. v. Department of Labor, et al.*; 595 U.S. ___ (2022).

27. Since the release of its Vaccine Mandate in August of 2021, Hawaiian has denied nearly every application for exemptions regardless of the employee's religious belief or medical reason not to get the vaccine.

28. Hawaiian failed and/or refused in good faith to provide reasonable accommodations to Plaintiff. Agreeing to the 12-Month Unpaid LOA was the only way they could return to their job if they were vaccinated. Refusal to accept the offer resulted in immediate termination. Hawaiian's 12-Month Unpaid LOA was not a good faith effort to accommodate religious conflicts.

29. In January 2021, several hundred Hawaiian employees remained unvaccinated. Some employees requested and were granted a 12-Month Unpaid LOA. Employees who elected the 12-Month Unpaid LOA were able to maintain health insurance through the end of January 2022 (or until the end of the month in which they began the 12-Month Unpaid LOA. Some unionized employees who did not request a 12-Month Unpaid LOA were held out of service ("HOS") pending

hearings on their union grievances, but continued to receive company health benefits. Non-union employees who did not apply for the 12-Month Unpaid LOA or were not granted leave were terminated effective January 5, 2022.

30.     Plaintiff was hired by Hawaiian as a First Officer in the Boeing 767 on February 4, 2016.

31.     On September 23, 2019, Plaintiff took a medical leave of absence to undergo heart valve replacement and aortic root replacement, per Federal Aviation Administration ("FAA").

32.     On July 30, 2021, Plaintiff informed Chief Pilot Peter Clark that he was returning to work because the FAA gave him clearance to fly.

33.     Due to Hawaiian Airlines vaccine mandate on August 9, 2021, the Plaintiff submitted on September 26, 2021, a certified Notice to Robin Kobayashi, Human Resources, and Peter Ingram, President and CEO Hawaiian Airlines, requesting that the Defendants provide more information regarding contract violation, risks of procedures (e.g., COVID-19 vaccine, masking in the flight deck and PCR testing) as well as liabilities so that he could make an informed consent decision regarding the mandate. This included but was not limited to a conditional acceptance if the Defendants could disprove the Plaintiffs research about risks of the vaccine, the breach of contract, and who is liable for damages and/or death from the vaccine if he took it. All three of these requests went unanswered and

were summarily dismissed.

34.    On August 9, 2021, Hawaiian Airlines' CEO Peter Ingram made the Vaccine Mandate Announcement.

35.    On September 23, 2019, Plaintiff underwent heart valve and aortic root replacements.

36.    On September 26/27, 2021, Plaintiff sent a letter via certified mail directly to HA CEO Peter Ingram and HA Human Resources Director Robin Kobayashi a "Conditional Acceptance" response for clarification for HA's Covid-19 Vaccine Policy, Compulsory Mask Policy, and Testing Policy.

37.    On September 30, 2021, Plaintiff emailed his COVID-19 Vaccination Religious Accommodation Request and notarized Affidavit of his religious beliefs to the Hawaiian's Leave of Absence Department ("LOA").

38.    On October 1, 2021, Dr. Jared Zeff, N.D., wrote a letter to Hawaiian, strongly recommending to Hawaiian to exempt Plaintiff from the COVID-19 Vaccine Mandate, for the following reasons ("Dr. Zeff's Letter"):

       a.    Plaintiff should not be subjected to the COVID vaccine because he already has superior immune status already and the significant risk the COVID vaccines have for Plaintiff;

       b.    Plaintiff was on medication to thin blood and the COVID-19 vaccines had verified risks of thrombosis, syncope, myocarditis and pericarditis

which would all put the Plaintiff in a high risk category for injury and/or death due to his tenuous heart situation;

       c.    Plaintiff already had a thrombotic heart attack in May 2017;

       d.    One of the primary complications of the COVID vaccine is thrombosis;

       e.    Plaintiff already had COVID and now have natural immunity; therefore, Plaintiff must be considered exempt from a mandated vaccine; and

       f.    Taking a vaccine presents considerable risks to Plaintiff's life, particularly in the form of increased risk of lethal thrombotic events caused by a vaccine he does not need.

39.    On October 7, 2021, Plaintiff emailed his COVID-19 Medical Accommodation Request Form together with Dr. Zeff's Letter, among other documents, to Hawaiian's LOA because of the weakened condition of his heart following the heart valve and aortic root replacements he underwent on September 23, 2019.

40.    On October 15, 2021, Plaintiff sent a request to Chief Pilot Peter Clark and Bob Johnson asking permission to record upcoming meeting with LOA dept. regarding Religious Accommodation as per Employee Handbook. No response

was given.

41.    On October 20, 2021, Plaintiff was interviewed by Willard Jackson and Nazarine Anderson regarding Plaintiff's religious accommodation request.

42.    On October 22, 2021, Hawaiian auto enrolled Plaintiff in the TPTP without his consent. When he found out, he sent Hawaiian an email objecting, stating he did not consent to being enrolled in the TPTP.

43.    On October 28, 2021, Hawaiian denied Plaintiff's request for religious exemption and medical exemption.

44.    On November 1, 2021, Plaintiff appealed Hawaiian's denial of his request for religious exemption and medical exemption

45.    On November 10, 2021, Plaintiff sent a letter to Peter Clark, Chief Pilot, regarding his request to go out on Medical Leave of Absence ("MLOA") due to unusual physical symptoms related to stressor of the HA Vaccine Mandate requirement. The MLOA was granted by Chief Pilot Clark.

46.    On November 11, 2021, Plaintiff sent an email to Crystal Ishikawa of Hawaiian informing her and the LOA Department of his need to be put on medical leave per FAA requirements and to be placed back on VEBA benefits as well.

47.    On November 23, 2021, Plaintiff submitted his application for

VEBA and supporting medical documents.

48.    From November 117, 2021 to April 29, 2022, Plaintiff had numerous email exchanges with Hawaiian requesting Hawaiian's acceptance of his VEBA benefits.

49.    On April 6, 2022, Karen Ho of Hawaiian wrote to Plaintiff requesting more information to process his VEBA claim.

50.    On April 14, 2022, Plaintiff fulfilled Ms. Ho's request for providing additional information.

51.    On May 3, 2022, Hawaiian, through Ms. Ho, denied Plaintiff's application for VEBA benefits.

52.    On July 7, 2022, Plaintiff's FAA Medical Examination was deferred to the FAA due to Anxiety and Vertigo, and his medical certification remained pending with the FAA.

53.    Hawaiian's Vaccine Mandate and the 12-Month Unpaid LOA caused Plaintiff to suffer severe stress.

54.    In the week leading up to the denial by Hawaiian, Plaintiff began experiencing numbness and tingling and loss of motor skills due directly to the stresses he was experiencing from Hawaiian.

55.    As a direct and proximate result of Hawaiian's Vaccine Mandate and refusal to grant a religious exemption and/or medical exemption to Plaintiff,

Plaintiff suffered severe stress and developed unusual physical symptoms, which forced him to take a medical leave of absence.

56.    On November 11, 2021, as a direct and proximate result of the stress caused by Hawaiian's wrongful conduct, Plaintiff filed for pension benefits under the Pilot's Voluntary Employee Beneficiary Association Disability and Survivors Benefits Plan ("VEBA").

57.    On May 3, 2022, Hawaiian denied Plaintiff's application for pilot's pension benefits under VEBA.

58.    On September 12, 2022, 13 months to the date, Hawaiian ended its Vaccine Mandate that required its 7,000 employees be vaccinated.

59.    Hawaiian was the last airline to lift the COVID-19 vaccination mandate.

60.    The ending of the mandate included 200 employees who had declined to take the COVID-19 vaccination and went on unpaid leave from Hawaiian under its 12-Month Unpaid LOA. Hawaiian announced that all of them were eligible to return to work when the new policy goes into effect on October 1, 2022.

## COUNT I
*Religious Discrimination under Title VII Civil Rights Act of 1964,*
*42 U.S.C. §2000e et seq., and Hawaii Revised Statutes § 378-2*

61.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs as though fully alleged herein.

62.    Plaintiff had a bona fide religious belief, the practice of which conflicts with compliance with Hawaiian's Vaccine Mandate.

63.    Plaintiff informed Hawaiian of his religious beliefs and objections.

64.    Defendants rejected Plaintiff's religious exemption request.

65.    Defendants discharged, threatened, or otherwise subjected her to an adverse employment action because of her inability to fulfill the job requirement.

66.    Defendants failed and/or refused to initiate good faith efforts to accommodate reasonably Plaintiff's religious beliefs.

67.    Defendants failed and/or refused to show that it could not reasonably accommodate Plaintiff without undue hardship.

68.    Defendants' wrongful conduct caused Plaintiff to suffer damages.

69.    Defendants' wrongful conduct was a substantial factor in causing Plaintiff's injury.

70.    Defendants' wrongful conduct caused Plaintiff to suffer damages.

71.    Defendants' wrongful conduct was willful, wanton, and/or reckless, in utter disregard for the health and welfare of Plaintiff.

72.    As a direct and proximate result of Defendants' wrongful

conduct, Plaintiff has suffered, and will continue to suffer loss of income, medical expenses, out-of-pocket expenses, severe depression and anxiety, loss of quality of life, and loss of enjoyment of life, and is entitled to recover back pay, front pay, compensatory damages, special damages, general damages, and punitive damages, including reasonable attorneys' fees and costs of suit, in such amounts as shall be shown at a trial or hearing hereof.

COUNT II
*Title I of the Americans with Disabilities Act of 1990,*
*42 U.S.C. § 12111, et seq., and Haw. Rev. Stat. § 378-2*

73.   Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs as though fully alleged herein.

74.   Plaintiff was at all relevant times herein a qualified individual able to perform the essential functions of his job with reasonable accommodations.

75.   Hawaiian was at all relevant times herein a covered entity as Plaintiff's employer engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

76.   Plaintiff at all at all relevant times herein had a disability in that he could not take the COVID-19 vaccination pursuant to Hawaiian's Vaccine Mandate because of a weakened heart due to heart replacement surgeries. He had a thrombotic heart attack in May 2017. One of the primary complications of the

COVID vaccine is thrombosis. In September 2019, he underwent heart valve and aortic root replacements, for which he had to take medication to thin blood. The COVID-19 vaccines had verified risks of thrombosis, syncope, myocarditis and pericarditis which would all put the Plaintiff in a high risk category for injury and/or death due to his tenuous heart situation. Hence, taking a COVID-19 vaccine presents considerable risks to Plaintiff's life, particularly in the form of increased risk of lethal thrombotic events caused by a vaccine he does not need.

77.    Plaintiff at all relevant times herein suffered an adverse employment action because of his disability in that Hawaiian refused to grant him a medical exemption from Hawaiian's Vaccine Mandate, requiring him to be vaccinated to fly as a pilot, even though Hawaiian knew, based upon medical evidence provided by Plaintiff, that Plaintiff could not take the COVID-19 vaccination, and taking the COVID-19 vaccination presents considerable risks to Plaintiff's life.

78.    Hawaiian at all relevant times herein failed to make reasonable accommodations to Plaintiff's known weakened heart condition and substantial risks to his health and life.

79.    Hawaiian at all relevant times herein could have provided reasonable accommodations, for instance, by allowing him to wear a face mask while working. Plaintiff already had COVID and now had natural immunity;

therefore, Plaintiff must be considered exempt from a mandated vaccine.

80.    Hawaiian cannot show that providing an accommodation would cause "undue hardship" to Hawaiian.

81.    Defendants' wrongful conduct caused Plaintiff to suffer damages.

82.    Defendants' wrongful conduct was a substantial factor in causing Plaintiff's injury.

83.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer loss of income, medical expenses, out-of-pocket expenses, severe depression and anxiety, loss of quality of life, and loss of enjoyment of life, and is entitled to recover back pay, front pay, compensatory damages, special damages, general damages, and punitive damages, including reasonable attorneys' fees and costs of suit, in such amounts as shall be shown at a trial or hearing hereof.

COUNT IV<br>
<em>Gross Negligence</em>

84.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs as though fully alleged herein.

85.    Defendants acted with reckless disregard of the need to use reasonable care, which was likely to cause foreseeable injury or harm to Plaintiff.

86.    Defendants' gross negligence caused Plaintiff to suffer damages

18

87.    Defendants' gross negligence was a substantial factor in causing Plaintiff's injury.

88.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer loss of income, medical expenses, out-of-pocket expenses, severe depression and anxiety, loss of quality of life, and loss of enjoyment of life, and is entitled to recover back pay, front pay, compensatory damages, special damages, general damages, and punitive damages, including reasonable attorneys' fees and costs of suit, in such amounts as shall be shown at a trial or hearing hereof.

WHEREFORE, Plaintiff prays for Judgment in his favor and against Defendants, jointly and severally, as follows:

A.    Reinstatement with full credit and benefits;

B.    Back pay in an amount to be determined at a trial or hearing hereof;

C.    Front pay in an amount to be determined at a trial or hearing hereof;

D.    Special damages in an amount to be determined at a trial or hearing hereof;

E.    General damages in an amount to be determined at a trial or hearing hereof;

F.      Compensatory damages in an amount to be determined at a trial or hearing hereof;

G.      Punitive damages in an amount to be determined at a trial or hearing hereof;

H.      Reasonable attorneys' fees and costs;

I.      Pre-judgment interest and post-judgment interest; and

J.      Any and all other relief as may be deemed just and equitable by the Court.

DATED:  Honolulu, Hawaii, June 16, 2023.

*/s/ Peter C. Hsieh*
MICHAEL JAY GREEN
PETER C. HSIEH

Attorneys for Plaintiff
LARS A. BRENNAN

20

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| LARS A. BRENNAN,<br><br>        Plaintiff,<br><br>     v.<br><br>HAWAIIAN AIRLINES, INC., and<br>HAWAIIAN HOLDINGS, INC.,<br><br>        Defendants. | CIVIL NO. 22-00481 HG-KJM<br><br>DEMAND FOR JURY TRIAL |

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable of right by jury in this case, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:  Honolulu, Hawaii, June 16, 2023.


*/s/ Peter C. Hsieh*
MICHAEL JAY GREEN
PETER C. HSIEH

Attorneys for Plaintiff
LARS A. BRENNAN