IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
LARS A. BRENNAN,              )    CIV. NO. 22-00481 HG-WRP
                             )
              Plaintiff,     )
                             )
         vs.                 )
                             )
HAWAIIAN AIRLINES, INC.;     )
HAWAIIAN HOLDINGS, INC.,     )
                             )
                             )
              Defendants.    )
                             )
_____)
```

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 122)**

In 2016, Plaintiff Lars A. Brennan began his employment with Defendant Hawaiian Airlines, Inc. as a First Officer pilot.

In 2019, Plaintiff had emergency open heart surgery to replace his aortic valve. Plaintiff was placed on medical leave.

On July 30, 2021, Plaintiff was certified by the Federal Aviation Administration to begin re-training to return to employment following his aortic valve replacement. Plaintiff was scheduled to begin re-qualifying as a Hawaiian Airlines pilot on November 15, 2021, to allow him to resume flying Defendants' aircraft after his medical leave.

Before Plaintiff was re-qualified, Defendant Hawaiian Airlines, Inc. implemented a mandatory vaccination policy on August 9, 2021, in the midst of the worldwide COVID-19 pandemic.

On September 30, 2021, Plaintiff requested an exemption from Defendants' vaccination policy based on his religious beliefs.

On October 7, 2021, Plaintiff submitted a letter from his medical provider, requesting an exemption from the vaccination policy based on his medical conditions.

On October 28, 2021, the Hawaiian Defendants denied Plaintiff's requests for an exemption from their vaccination policy.

On November 10, 2021, prior to the date Plaintiff was scheduled to re-qualify to return to work, Plaintiff informed the Hawaiian Defendants that he was not able to perform the essential functions of a pilot, as he was suffering from vertigo, limb numbness, anxiety, muscle spasms, and dizziness.

Plaintiff requested that he continue his medical leave of absence from Defendants, which was granted.  Plaintiff has never returned to work as a pilot after being granted a medical leave of absence in 2019.

On November 10, 2022, Plaintiff filed suit against the Hawaiian Defendants, claiming:

**COUNT I:**  Religious Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) and Haw. Rev. Stat. § 378-2; and

**COUNT II:** Disability Discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. and Haw. Rev. Stat. § 368-1.5.

Defendants have filed a Motion for Summary Judgment.

Defendants assert that Plaintiff is unable to prevail on his religious discrimination claim because granting Plaintiff's request to be exempt from their vaccination policy would have placed an undue burden on the company and endangered other employees and the public.

Defendants assert that Plaintiff is unable to prevail on his disability discrimination claim. Plaintiff did not dispute that he was unable to perform the essential functions of a pilot. Plaintiff voluntarily self-grounded from flying and requested a medical leave of absence in November 2021.

Construing the record in a light most favorable to Plaintiff, the Court finds there are no genuine issues of material fact and that Defendants are entitled to summary judgment in their favor.

Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc.'s Motion for Summary Judgment (ECF No. 122) is **GRANTED.**

## PROCEDURAL HISTORY

On November 10, 2022, Plaintiff filed the Complaint. (ECF No. 1).

On June 16, 2023, Plaintiff filed a First Amended Complaint. (ECF No. 31).

On February 20, 2025, the Court held a hearing regarding the filing of dispositive motions. (ECF No. 102).

On February 26, 2025, the Court approved the Parties
STIPULATION FOR DISMISSAL WITH PREJUDICE AS TO COUNT IV FOR GROSS
NEGLIGENCE.  (ECF No. 106).

On March 5, 2025, the Court held a further status
conference.  (ECF No. 108).

On the same date, Defendant filed a Motion to Exclude Expert
Report.  (ECF No. 107).

On March 10, 2025, the Court set a briefing schedule on the
Motion to Exclude Expert Report.  (ECF No. 110).

On March 24, 2025, the Court granted Plaintiff's request for
a continuance of the briefing schedule on the Motion to Exclude
Expert Report.  (ECF No. 115).

On March 26, 2025, Defendants filed a Motion in Limine.
(ECF No. 117).

On April 4, 2025, the Court held a status conference.  (ECF
No. 120).  Defendant requested leave to file a Motion for Summary
Judgment, which the Court granted.  The Court held the other
motions in abeyance until disposition of the motion for summary
judgment.  (ECF No. 120).

On April 14, 2025, Defendants filed the MOTION FOR SUMMARY
JUDGMENT AND CONCISE STATEMENT OF FACTS.  (ECF Nos. 122, 123).

On April 29, 2025, Plaintiff filed his Opposition and
Concise Statement of Facts in Opposition.  (ECF No. 125).

On May 1, 2025, the Court issued a Minute Order striking

Plaintiff's Opposition and Concise Statement of Facts in Opposition for failing to comply with Federal Rule of Civil Procedure 56 and the Local Rules for the District of Hawaii. (ECF No. 126).

On May 15, 2025, Plaintiff filed a Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment. (ECF No. 131).  Plaintiff <u>did not</u> file a Memorandum in Opposition to Defendants' Motion.

On May 28, 2025, Defendants filed their Reply and Concise Statement of Facts in Reply.  (ECF Nos. 132, 133).

The Court elects to decide Defendants' Motion without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

**<u>BACKGROUND</u>**

**The Following Facts Are Not In Dispute:**

**<u>PLAINTIFF TOOK A MEDICAL LEAVE OF ABSENCE FROM HIS EMPLOYMENT AS A PILOT WITH DEFENDANT HAWAIIAN AIRLINES, INC. IN SEPTEMBER 2019</u>**

On February 4, 2016, Plaintiff Lars A. Brennan was hired by Defendant Hawaiian Airlines, Inc. as a First Officer pilot. (Def.'s Concise Statement of Facts ("CSF") ¶ 18, ECF No. 123; Pl.'s CSF at ¶ 18, ECF No. 131).

Plaintiff's deposition provides the following health information prior to 2019 as follows:

In 2017, Plaintiff suffered a heart attack due to a thrombotic blood clot.  (Deposition of Lars A. Brennan ("Brennan

5

Depo.") at p. 61, attached as Ex. JR-1 to Def.'s CSF, ECF No.
123-2).

Neither the portions of Plaintiff's deposition submitted to
the Court (Def.'s Ex. JR-1, ECF No. 123-2; Pl.'s Ex. 3, ECF No.
131-3) nor the First Amended Complaint (ECF No. 31) provide any
information as to whether Plaintiff took a leave of absence
following his 2017 heart attack due to his thrombotic blood clot.

Plaintiff testified that he suffered a second heart
complication in 2019.  (Brennan Depo. at p. 61, ECF No. 123-2).
Plaintiff explained that he "had been taking testosterone-type
therapy from Kaiser. [His] testosterone was the level of an 87
year old male so they had [him] on therapy.  Six weeks after [he]
started taking the injections, [he] had a heart attack."  (Id.
Plaintiff testified that he had an enlarged aortic root that was
dilated beyond the normal range, and that on September 23, 2019,
he had to undergo emergency open heart surgery to repair his
aortic root and his aortic valve.  (Id. at p. 62).

Plaintiff was placed on medical leave on September 23, 2019.
(Id.)

Plaintiff was required to re-qualify with Defendant Hawaiian
Airlines, Inc. prior to resuming work as a pilot.  (Id. at p. 72;
Declaration of Ralph Peter Clark, Systems Chief Pilot for
Defendant Hawaiian Airlines, Inc. ("Clark Decl.") at ¶ 5,
attached to Def.'s CSF, ECF No. 123-35).

Nearly two years after being placed on medical leave on September 23, 2019, Plaintiff received a medical clearance from the Federal Aviation Administration.  He then was allowed to begin the process to re-qualify as a pilot for Defendant Hawaiian Airlines, Inc. as of July, 30, 2021.  (Id.)

There is no dispute that Plaintiff was required to be re-qualified to fly as a pilot for Defendant Hawaiian Airlines, Inc. given Plaintiff's long absence from piloting aircraft.  (Clark Decl. at ¶ 7, ECF No. 123-35; Brennan Depo. at p. 72, ECF No. 123-2).

Plaintiff was scheduled to begin mandatory re-qualification training on November 10, 2021.  (Clark Decl. at ¶ 8, ECF No. 123-35; Brennan Depo. at p. 73, ECF No. 123-2).

Plaintiff Brennan never completed the mandatory re-qualification training. (Clark Decl. at ¶ 7, ECF No. 123-35; Brennan Depo. at pp. 73-74, ECF No. 123-2).

**COVID-19 WORLDWIDE PANDEMIC**

While Plaintiff Brennan was on extended medical leave following his aortic valve replacement in September 2019, COVID-19 began spreading throughout the world.

"Severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2)," which causes a disease known as "COVID-19" emerged in late 2019 and spread worldwide, causing a major global pandemic.

(Expert Report of Dr. Frederick Chen at p. 3, attached as Ex. FC-1 to Def.'s CSF, ECF No. 123-31).

By early 2020, COVID-19 was declared a pandemic by the World Health Organization ("WHO"), with countries implementing various public health measures to curb the spread. (Id.)

On March 4, 2020, the Governor of the State of Hawaii issued an Emergency Proclamation, which required masks to be worn in public. (Eighteenth Proclamation Related to the COVID-19 Emergency, dated February 12, 2021, attached as Ex. JR-11 to Def.'s CSF, ECF No. 123-12).

On January 21, 2021, President Biden issued Executive Order 13998, which required masks to be worn in airports and aboard commercial aircraft to prevent the spread of COVID-19. (Executive Order 13998, attached as Ex. JR-4 to Def.'s CSF, ECF No. 123-5).

On February 1, 2021, the U.S. Centers for Disease Control and Prevention ("CDC") issued an agency order requiring masks to be worn on public transportation. (CDC Order titled, "Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs," 86 Fed. Reg. 8025-30, dated Feb. 1, 2021, attached as Ex. JR-15 to Def.'s CSF, ECF No. 123-16).

The U.S. Transportation Security Administration extended the requirement to wear masks in airports and aboard commercial aircraft. (TSA Press Release dated January 31, 2021, attached as

8

Ex. JR-5 to Def.'s CSF, ECF No. 123-6; TSA Press Release dated
April 30, 2021, attached as Ex. JR-6 to Def.'s CSF, ECF No. 123-
7; TSA Press Release dated August 20, 2021, attached as Ex. JR-7
to Def.'s CSF, ECF No. 123-8; TSA Statement dated March 10, 2022,
attached as Ex. JR-8, ECF No. 123-9; TSA Statement dated April
13, 2022, attached as Ex. JR-9, ECF No. 123-10; TSA Statement
dated April 18, 2022, attached as Ex. JR-10, ECF No. 123-11).

By February 12, 2021, there were 26,700 documented cases of
COVID-19 in Hawaii, and 425 deaths attributed to the disease.
(Eighteenth Proclamation Related to the COVID-19 Emergency, dated
February 12, 2021, attached as Ex. JR-11 to Def.'s CSF, ECF No.
123-12).

The Governor of the State of Hawaii issued an Emergency
Proclamation that required all travelers to the State to submit
to a mandatory screening process.  (Id. at p. 6).  With limited
exceptions, all persons traveling to the State were subject to a
mandatory self-quarantine.  (Id. at p. 7).

Mandatory quarantine was also required for persons traveling
between counties within the State of Hawaii.  (Id. at p. 12).

## DEFENDANT HAWAIIAN AIRLINES, INC.'S RESPONSE TO THE COVID-19 WORLDWIDE PANDEMIC AND ITS VACCINATION POLICY

Employee sickness during the COVID-19 pandemic forced
Defendant Hawaiian Airlines, Inc. to cancel flights and lose
revenue.  (Declaration of Jon Snook, Chief Operations Officer of

Defendant Hawaiian Airlines, Inc., ("Snook Decl.") at ¶¶ 6, 8,
attached to Def.'s CSF, ECF No. 123-32).  Chief Operations
Officer Jon Snook stated that there was continued concern during
the pandemic of possible outbreaks and further operational
disruption.  (Id. at ¶¶ 4-5).  There were also reports that three
of Defendants' employees died from COVID-19, including one
employee who contracted the disease after attending a company
training.  (Declaration of Senior Vice President of Human
Resources Robin Kobayashi ("Kobayashi Decl.") at ¶¶ 8-9, attached
to Def.'s CSF, ECF No. 123-20).

Defendants Hawaiian Airlines, Inc. and its parent company
Defendant Hawaiian Holdings, Inc. ("Hawaiian Defendants") lost
approximately $896 million dollars and took on over one billion
dollars ($1,000,000,000) in debt between 2020 and 2022 due to the
COVID-19 pandemic.  (Declaration of Jon Snook, Chief Operations
Officer of Defendant Hawaiian Airlines, Inc., ("Snook Decl.") at
¶ 8, attached to Def.'s CSF, ECF No. 123-32; Hawaiian Holdings,
Inc.'s Form 10-K filed with the U.S. Securities and Exchange
Commission, dated Feb. 15, 2023, attached as Ex. JS-1 to Def.'s
CSF, ECF No. 123-33; Hawaiian Holdings, Inc.'s Form 8-K filed
with the U.S. Securities and Exchange Commission, dated Feb. 4,
2021, attached as Ex. JS-2 to Def.'s CSF, ECF No. 123-34).

Senior Vice President of Human Resources Robin Kobayashi
stated that Defendant Hawaiian Airlines, Inc. reviewed its

policies and procedures in an attempt to minimize financial loss during the pandemic.  (Kobayashi Decl. at ¶ 3, ECF No. 123-20).

On August 9, 2021, Defendant Hawaiian Airlines, Inc. announced a vaccination policy.  (Id. at ¶ 4).  The vaccination policy required all of Defendant's U.S.-based employees to be vaccinated against COVID-19 by November 1, 2021.  (Id.)  The Hawaiian Defendants created a process to allow employees to seek accommodations from the policy by submitting a request to the Human Resources Department by October 1, 2021.  (Id. at ¶¶ 4, 6).

Following the announcement of the Hawaiian Defendants' vaccination policy in August 2021, COVID-19 cases rose significantly in Hawaii, with the Hawaii Department of Health reporting a "tidal wave" of 10,817 infections between August 15, 2021 and August 29, 2021.  (Hawaii Department of Health Press Release titled, "HAWAII SURPASSES 10,000 ACTIVE COVID-19 CASES," dated August 29, 2021, attached as Ex. JR-2 to Def.'s CSF, ECF No. 123-3).

The effects of the Delta variant surge in August 2021 "convinced Hawaiian management that instituting the Vaccine Policy was necessary to maintaining the safety of Hawaiian's employees."  (Kobayashi Decl. at ¶ 10, ECF No. 123-20).

On September 9, 2021, President Biden issued Executive Order 14042, known as the Federal Contractor Mandate, which required the Hawaiian Defendants to ensure that their employees were

11

vaccinated against COVID-19 except in limited circumstances.
(Declaration of Senior Director of Leave Management Willard
Jackson ("Jackson Decl.") at ¶ 3, attached to Def.'s CSF, ECF No.
123-23; Guidance for Federal Contractors and Subcontractors,
dated November 10, 2021, attached as Ex. WJ-1 to Def.'s CSF, ECF
No. 123-24).

On October 1, 2021, the Governor of the State of Hawaii
issued an Emergency Proclamation Related to the State's COVID-19
Delta Response.  (Emergency Proclamation Related to the State's
COVID-19 Delta Response, attached as Ex. JR-12 to Def.'s CSF, ECF
No. 123-13).  The Emergency Proclamation stated that "the
recorded number of cases and deaths has continued to increase at
an alarming rate, with more than 79,000 documented cases of
COVID-19 in the State and more than 780 deaths attributed to this
disease."  (Id.)  The Governor explained that the Delta strain
variant of COVID-19 was causing a high number of cases in both
the State of Hawaii and throughout the United States of America.
(Id.)

In response to the increased risk of infection and in order
to "avert unmanageable strains on our healthcare system and other
catastrophic impacts to the State," the Government implemented an
Emergency Proclamation to require vaccination and testing for
State and County employees.  (Id. at p. 6).  The Governor also
implemented requirements for employees of State Contractors to

report vaccination status, to wear masks at State locations, and to provide documentation as to employees' testing results.  (Id. at pp. 25-26).

By January 26, 2022, the Governor of the State of Hawaii reported "more than 208,000 documented cases of COVID-19 and 1,149 deaths attributed to this disease in the State." (Emergency Proclamation Related to COVID-19 (Omicron Variant), attached as Ex. JR-13 to Def.'s CSF, ECF No. 123-14).

**PLAINTIFF BRENNAN'S REQUESTS FOR EXEMPTION FROM THE VACCINATION POLICY**

**Plaintiff Brennan Has Been On Medical Leave Since September 2019**

On September 23, 2019, Plaintiff was placed on medical leave following his open heart surgery to replace his aortic root and his aortic valve.  (Brennan Depo. at p. 62, attached as Ex. JR-1 to Def.'s CSF, ECF No. 123-2).

Nearly two years later, in July 31, 2021, Plaintiff informed Defendant Hawaiian Airlines, Inc. that he was able to begin the process to re-qualify as a pilot because he was given medical clearance from the Federal Aviation Administration.  (Clark Decl. at ¶ 7, ECF No. 123-35; Brennan Depo. at p. 72, ECF No. 123-2).

Plaintiff was scheduled to begin mandatory re-qualification training on November 15, 2021.  (Clark Decl. at ¶ 8, ECF No. 123-35).

**Plaintiff Brennan Requested Accommodation From Defendants'**
**Vaccination Policy**

Following the Hawaiian Airlines Defendants' announcement of
their vaccination policy in August 2021, Plaintiff Brennan wrote
to management to express his concerns about the policy on
September 27, 2021.  (Letter from Plaintiff Lars A. Brennan to
Peter Ingram, President and CEO of Defendant Hawaiian Airlines,
dated September 27, 2021, attached as Ex. RK-1 to Def.'s CSF, ECF
No. 123-21).

On September 30, 2021, Plaintiff submitted a Religious
Accommodation Request Form.  (Religious Accommodation Request
dated Sept. 30, 2021, attached as Ex. WJ-2, ECF No. 123-25).

On October 7, 2021, Plaintiff submitted a Reasonable
Accommodation Request Form based on the medical issue related to
his 2019 open heart surgery and aortic valve replacement and his
continued use of blood thinner medication. (Reasonable
Accommodation Request dated Oct. 7, 2021 and letter from Jared
Zeff, N.D., dated Oct. 1, 2021, attached as Ex. WJ-3, ECF No.
123-26).  The form included a letter from Plaintiff's Naturopath
Jared L. Zeff, N.D.  (Id.)  The basis for exemption in the letter
was also based on Plaintiff's purported "natural immunity" from
COVID-19 because he had already had COVID-19.  (Id.)

On October 22, 2021, Senior Director of Leave Management
Willard Jackson and Nazarene Anderson interviewed Plaintiff

regarding his accommodation requests.  (Jackson Decl. at ¶ 13, ECF No. 123-23).

On October 28, 2021, the Hawaiian Defendants denied Plaintiff's accommodation requests.  (Letter to Lars Brennan from Hawaiian Airlines titled, "Request for Religious and Medical Accommodation - DENIAL," dated Oct. 28, 2021, attached as Ex. WJ-5 to Def.'s CSF, ECF No. 123-28).

On November 2, 2021, Plaintiff appealed the denial of his requests for accommodation.  (E-mail from Lars Brennan to Robin Kobayashi dated Nov. 2, 2021, attached as Ex. WJ-6 to Def.'s CSF, ECF No. 123-29).

On November 3, 2021, Vice President of Human Resources Robin Kobayashi e-mailed Plaintiff to inform him that Defendants declined to change their decision that Plaintiff could not be accommodated as requested.  (E-mail from Robin Kobayashi to Plaintiff dated Nov. 3, 2021, attached as Ex. RK-2 to Def.'s CSF, ECF No. 123-22).  Ms. Kobayashi informed Plaintiff that he could submit additional medical or religious information in support of his request by November 10, 2021.  (Id.)

**Plaintiff Brennan Was Not Physically Able To Pilot An Aircraft**

On November 10, 2021, prior to Plaintiff's scheduled date for re-qualification on November 15, 2021, Plaintiff submitted a request for a Medical Leave of Absence because he was no longer

15

able to fly as a pilot.  (Clark Decl. at ¶ 8, ECF No. 123-35; see Brennan Depo. at p. 189, ECF No. 123-2).

Plaintiff's medical provider Jared Zeff, N.D., testified at his deposition that Plaintiff told him in the summer of 2021 that he suffered from dizziness, anxiety, limb numbness, back pain, cramping, muscle fatigue, vertigo, and low adrenal levels. (Deposition of Jared Zeff ("Zeff Depo.") at pp. 30-33, attached as Ex. JR-18 to Def.'s CSF, ECF No. 123-19).

In Plaintiff's own deposition testimony, he admitted that, at the time he requested the religious and medical exemptions from the vaccination policy in October 2021, he was already unable to fly as a pilot due to his experiencing numbness, cramping, and limited motor skills.  (Brennan Depo. at p. 184, ECF No. 123-2).

Plaintiff did not inform the Hawaiian Defendants that he was unable to safely fly until November 10, 2021, after his accommodation requests were denied.  (Id. at pp. 185, 189; Zeff Depo. at pp. 30-33, ECF No. 123-19).  Plaintiff admits that he represented to the Hawaiian Defendants that he was "fit to fly" when he submitted his accommodation requests "even though [he] wasn't."  (Brennan Depo. at p. 189, ECF No. 123-2).

Plaintiff's November 10, 2021 request for a continued Medical Leave of Absence was granted by Defendants.  (Clark Decl. at ¶ 8, ECF No. 123-35).

16

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To defeat summary judgment "there must be sufficient 'evidence that a reasonable jury could return a verdict for the nonmoving party.'" Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id.

17

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson, 477 U.S. at 249-50).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on

18

conclusory allegations unsupported by factual data to create an issue of material fact." <u>Hansen v. U.S.</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see also</u> <u>Nat'l Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

Plaintiff filed suit against the Hawaiian Defendants, claiming:

**COUNT I:** <u>Religious Discrimination</u> in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) and Haw. Rev. Stat. § 378-2; and

**COUNT II:** <u>Disability Discrimination</u> in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. and Haw. Rev. Stat. § 368-1.5.

Defendants seek summary judgment in their favor as to both counts.

Defendants filed a Motion for Summary Judgment.

On April 29, 2025, Plaintiff filed his Opposition and Concise Statement of Facts in Opposition that were not in conformity with either the Federal Rules of Civil Procedure or the Local Rules for the District of Hawaii. (ECF No. 125).

On May 1, 2025, the Court gave Plaintiff leave until May 15, 2025, to file an Opposition and Concise Statement of Facts in conformity with the Rules.

On May 15, 2025, Plaintiff filed a Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment.

19

(ECF No. 131).  Plaintiff did not file a Memorandum in Opposition to Defendants' Motion.

Plaintiff's failure to file a Memorandum in Opposition to Defendants' Motion for Summary Judgment constitutes a waiver of any legal argument Plaintiff wishes to raise.  Onley v. Davis, 2025 WL 297679, *3-*4 (E.D. Cal. Jan. 24, 2025); see District of Hawaii Local Rule 7.2.  Despite Plaintiff's failure to comply with the Rules, the Court independently reviewed the record to ensure that Defendants are entitled to summary judgment as a matter of law.  Cristobal v. Siegel, 26 F.3d 1488, 1491 (9th Cir. 1994); see Heinemann v. Satterberg, 731 F.3d 914, 918 (9th Cir. 2013).

## I.    Plaintiff's Claims For Religious Discrimination Based On A Failure To Accommodate

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee because of the employee's religion.  42 U.S.C. § 2000e-2(a).  A claim for religious discrimination pursuant to Title VII may be asserted based on a theory of failure to accommodate an employee's religious beliefs.  Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004); Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679, 681 (9th Cir. 1998).

To establish a failure to accommodate religion claim at the summary judgment stage, a plaintiff must set forth a prima facie

case that (1) he had a bona fide religious belief, the practice
of which conflicts with an employment duty; (2) he informed his
employer of the belief and conflict; and (3) the employer
subjected him to an adverse employment action because of his
inability to fulfill the job requirement.  Peterson, 358 F.3d at
606.

Once a plaintiff establishes a prima facie case, the burden
then shifts to the employer to show that it could not reasonably
accommodate the employee without undue hardship.  Id.

Courts apply the same framework at summary judgment to
evaluate religious accommodations claims under both Title VII of
the Civil Rights Act of 1964 and Section 378-2 of the Hawaii
Revised Statutes.  Victorino v. Hawaiian Airlines, Inc., Civ. No.
22-00527HG-WRP, 2024 WL 5108276, *5 (D. Haw. Dec. 12, 2024).

### A.    Prima Facie Case Of Failure To Accommodate Religion

The Court assumes, without deciding, that Plaintiff can
establish a prima facie case of failure to accommodate his
religious beliefs.

The burden then shifts to the Hawaiian Defendants to show
that it could not accommodate Plaintiff without undue hardship on
the conduct of their business.  Petersen v. Snohomish Regional
Fire and Rescue,    F.4th   , 2025 WL 2503128, *5-*6 (9th Cir.
2025).

21

**B.    Undue Hardship**

The United States Supreme Court has explained that an undue hardship is more than a de minimis cost or burden.  Groff v. DeJoy, 600 U.S. 447, 453-54 (2023).  The undue hardship analysis must take into account all relevant factors, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer. Id. at 471.

In the context of vaccine mandates during the COVID-19 pandemic, the Ninth Circuit Court of Appeals explained in Petersen v. Snohomish Regional Fire and Rescue,    F.4th  , 2025 WL 2503128, *5-*6 (9th Cir. 2025), that it is appropriate to examine: (1) health and safety costs, (2) operational burdens, and (3) financial burdens on the employer.

**1.    Health And Safety Costs**

**a.    Dr. Chen's Expert Report**

The Hawaiian Defendants provided a Declaration and an expert report for their medical expert Frederick Ming Chen, M.D., M.P.H. (Declaration of Frederick Ming Chen ("Chen Decl.") attached to Def.'s CSF, ECF No. 123-30; Expert Report of Dr. Frederick Chen at p. 3, attached as Ex. FC-1 to Def.'s CSF, ECF No. 123-31).

Dr. Chen currently serves as the Chief Health and Science

Officer at the American Medical Association.  (Chen Decl. at ¶ 1,
ECF No. 123-30).  Dr. Chen previously served as a Professor of
Family Medicine at the University of Washington and Chief of
Family Medicine at Harborview Medical Center in Seattle.  (Chen
Decl. at ¶¶ 1-3, ECF No. 123-30).

Dr. Chen explains that he served as an advisor to Defendant
Hawaiian Airlines, Inc. in their implementation of their
vaccination policy and their review of accommodations requests.
(Id. at ¶¶ 8-10).

###### b.   Vaccination Protected The Public By Preventing Spread Of The Disease, Reducing The Severity Of The Illness, And Lowering Risks Of Hospitalization And Death

In his expert report, Dr. Chen explains that the consensus
in the scientific community and public health authorities during
the global COVID-19 pandemic was that vaccination was necessary
to protect the public, reduce the severity of the illness, and
lower the risk and number of hospitalizations and deaths due to
COVID-19.  (Chen Expert Report at p. 4, ECF No. 123-31; Chen
Decl. at ¶ 15, ECF No. 123-30).

The Ninth Circuit Court of Appeals has recognized that the
medical consensus from health experts including the U.S. Centers
for Disease Control and Prevention supported vaccination mandates
by employers during the height of the COVID-19 pandemic in 2021.
Health Freedom Defense Fund, Inc. v. Carvalho, 148 F.4th 1020,

1024 (9th Cir. 2025) (en banc).

Dr. Chen states that "COVID-19 vaccines are safe, effective, and associated with mild side effects and a greatly reduced risk of severe illness or death.  Once administered, vaccines are a safety measure that cannot be circumvented or subject to human error."  (Chen Decl. at ¶ 11, ECF No. 123-30).

Plaintiff does not dispute that it was reasonable for employers to conclude that COVID-19 vaccines would protect the health and safety of their employees as found by the Ninth Circuit Court of Appeals, sitting en banc, in <u>Heath Freedom Defense Fund, Inc. v. Carvalho</u>, 148 F.4th 1020, 1031 (9th Cir. 2025).

Plaintiff also does not challenge Dr. Chen's opinion that the Defendants' vaccination policy "was an absolute necessity to maintain the safety of Hawaiian's employees."  (Compare Def.'s CSF ¶ 4, ECF No. 123 to Pl.'s Response CSF at ¶ 4, ECF No. 131).

Plaintiff did not provide a medical expert to dispute Dr. Chen's opinions.  Plaintiff does not dispute any of the evidence in the record about the health and safety costs posed by the COVID-19 pandemic on the Hawaiian Defendants.

### c.   Defendants' Concerns About Employee Health

The undisputed evidence in the record demonstrates that the Hawaiian Defendants implemented the vaccination policy in order

to protect the public and their own employees.

In August 2021, COVID-19 cases rose significantly in Hawaii, with the Hawaii Department of Health reporting a "tidal wave" of 10,817 infections between August 15, 2021 and August 29, 2021. (Hawaii Department of Health Press Release entitled, "HAWAII SURPASSES 10,000 ACTIVE COVID-19 CASES," dated August 29, 2021, attached as Ex. JR-2 to Def.'s CSF, ECF No. 123-3).

Surges in positive cases due to variants of the virus "convinced Hawaiian management that instituting the Vaccine Policy was necessary to maintaining the safety of Hawaiian's employees." (Declaration of Defendant's Vice President of Human Resources Robin Kobayashi at ¶ 10, ECF No. 123-20).

The Ninth Circuit Court of Appeals held in Bordeaux v. Lions Gate Entertainment, Inc., 2025 WL 655065, at *2 (9th Cir. Feb. 28, 2025) that evidence of a surge in COVID-19 cases demonstrated that the plaintiff's religious accommodations request placed an undue hardship on the employer where social distancing was not possible.

In addition, by September 2021, Hawaiian Airlines officials had been told that three of their employees had died as a result of COVID-19. (Chen Expert Report at p. 3, ECF No. 123-31; Kobayashi Decl. at ¶ 9, ECF No. 123-20). One of the employees who died was a flight attendant who tested positive for COVID-19 along with 16 others after an in-person training event held in

the conference rooms at Hawaiian's corporate headquarters. (Kobayashi Decl. at ¶ 9, ECF No. 123-20).

Plaintiff does not dispute that the Hawaiian Defendants implemented the vaccination policy in response to concerns about health and safety. (Compare Def.'s CSF ¶ 4, ECF No. 123 to Pl.'s Response CSF at ¶ 4, ECF No. 131).

Numerous courts have found the possibility of an unvaccinated individual getting others sick is a non-speculative risk that supports a finding of undue hardship on an employer in the COVID-19 context. <u>Petersen</u>, 2025 WL 2503128, at *6; <u>Bordeaux v. Lions Gate Entertainment, Inc.</u>, 703 F.Supp.3d 1117, 1136 (C.D. Cal. Nov. 21, 2023) (collecting cases).

> ### d.    Plaintiff Refused To Accept Accommodations Of Masking Or Testing

Plaintiff did not request any reasonable accommodation from the vaccination policy. Plaintiff, instead, requested to be exempt from the vaccination policy and refused alternatives.

Plaintiff stated in his request for accommodation that he refused vaccination and would not wear a mask during training and would not wear a mask on the flight deck. (Pl.'s Reasonable Accommodation Request Form, attached as Ex. WJ-3, ECF No. 123-26). Plaintiff also refused to participate in the Defendants' testing program because he believed it infringed on his personal freedom. (Brennan Depo. at p. 111, ECF No. 123-2).

        **e.   Testing, Masking, And Social Distancing Were Not Reasonable Alternatives To Vaccination For Plaintiff**

Social distancing was not an option in this case. Pilots perform jobs that require physical presence for which remote work is not an available accommodation. (Chen Expert Report at p. 5, ECF No. 123-31).

Even if Plaintiff would have agreed to testing and masking, Dr. Chen explains in his expert report that alternatives to vaccination, such as regular testing and/or masking, were not reasonable alternatives to vaccination in this case. (Chen Decl. at ¶ 12, ECF No. 123-30). Dr. Chen explained why testing was an insufficient accommodation, as follows:

> While vaccines are prophylactic measures meant to prevent the contraction and transmission of COVID-19, testing is a diagnostic tool that simply determines whether an individual has COVID-19 at a particular moment in time. Therefore, it is possible for an employee to test negative on a given day, contract COVID-19 after the test is administered, and be contagious before the next test is administered. In the meantime, that employee could have exposed their colleagues, customers, or other members of the community to COVID-19. Additionally, any lag time between obtaining a test swab from an employee to receiving a positive test result would enable an infected employee to expose those around them to COVID-19. Finally, tests are not 100% accurate, further risking the possibility than an infected employee could expose others to COVID-19.

(Chen Decl. at ¶ 12, ECF No. 123-30).

Dr. Chen also explained why masking and social distancing were insufficient accommodations:

> Other measures like masking and social distancing are
> similarly insufficient.  As a preventative measure,
> masking requires that the employee properly wear a
> well-fitting mask at all relevant times....
> Unfortunately, as I have observed, it can be difficult
> for individuals to remain consistently vigilant with
> mask-wearing, which reduces what protection masking
> does provide.  Similarly, social distancing requires
> constant attention to where an individual is situated
> as compared to others, and is therefore also subject to
> human discretion an error.

(Chen Decl. at ¶ 13, ECF No. 123-30).

In his Concise Statement of Facts, Plaintiff does not dispute that testing, masking, and social distancing were less effective than vaccination and admits that he did not propose any other accommodation besides exemption from vaccination.  (Compare Def.'s CSF ¶ 5, ECF No. 123 to Pl.'s Response CSF at ¶ 5, ECF No. 131).

Plaintiff's requested accommodation to allow him to fly on aircraft unvaccinated would have resulted in an undue hardship to Defendants because it would have jeopardized the safety of others, including Plaintiff's co-workers and the public.  Bhatia v. Chevron, 734 F.2d 1382, 1383-84 (9th Cir. 1984).

Numerous other courts have found that a plaintiff's request for exemption from vaccination during the height of the COVID-19 pandemic was not a reasonable accommodation and posed an undue burden on employers who were concerned for public health.  Bordeaux, 2025 WL 655065, at *2 (9th Cir. Feb. 28, 2025); Efimoff v. Port of Seattle, 2024 WL 4765161, *9 (W.D. Wash. Nov. 13,

2024) (finding masking, periodic testing, and social distancing
request for accommodation by unvaccinated employee was an undue
hardship in context of COVID-19 given the administrative burden
and shortage of test kits); see also Rodrique v. Hearst
Communications, Inc., 126 F.4th 85, 91-92 (1st Cir. 2025)
(finding that an employer may properly rely on the prevailing
medical consensus at the time to determine that an accommodation
is not reasonable and poses an undue burden by endangering public
health).

### f.   EEOC Guidance

The Ninth Circuit Court of Appeals ruled in Petersen that
courts should look to the United States Equal Employment
Opportunity Commission ("EEOC") for guidance to determine if
health and safety costs would have imposed an undue hardship on
an employer.  Petersen, 2025 WL 2503128, *7 (citing Groff, 600
U.S. at 471).

The EEOC stated that when considering undue hardship in the
context of COVID-19, employers should consider if the employee
"works in a solitary or group setting," "has close contact with
other employees or members of the public," and "works outdoors or
indoors."  Id. (citing What You Should Know About COVID-19 and
the ADA, the Rehabilitation Act, and Other EEO Laws, EEOC
(published Mar. 1, 2022), https://www.eeoc.gov/wysk/

what-you-should-know-about-covid-19-and-ada-rehabilitation-act-an

d-other-eeo-laws [https://perma.cc/CQ9C-JPNY]).

Each of the EEOC's identified factors supports a finding of
undue hardship in this case.  Pilots, such as Plaintiff, must
interact with other members of the crew and must be physically
present in public settings and travel through airports.  Pilots
sit in close quarters in cockpits and the physical dimensions of
the cockpits in Hawaiian's aircraft do not allow for social
distancing.  (Clark Decl. at ¶ 9, ECF No. 123-35).

Allowing Plaintiff to fly unvaccinated in late 2021 would
have come at a substantial cost to Defendants.  The objective,
unrebutted medical evidence shows that Defendants would have
faced significant health and safety costs by allowing
unvaccinated pilots such as Plaintiff to continue working.  It is
well-established that health experts at the time recommended that
individuals receive COVID-19 vaccinations and had been reporting
that such vaccinations were effective in preventing and spreading
the disease.  Health Freedom Defense Fund, Inc., 148 F.4th at
1024 (en banc).

The threat to the health and safety of Defendants' employees
and the public at large in allowing unvaccinated employees to
work in Defendants' aircraft, in airports, and in crowded public
settings is undisputed.  "[I]t was more than reasonable for
[employers] to conclude that COVID-19 vaccines would protect the

30

health and safety of its employees." Id. at 1031.

Plaintiff has not presented any evidence to rebut the medical evidence in the record. Plaintiff also proposed no reasonable alternative to vaccination. Plaintiff refused to test, could not socially distance, and would only agree to wear masks in limited settings. Vaccination offered the safest, easiest, and most effective way of ensuring the safety of Defendants' employees, customers, and the public. (Chen Decl. at ¶¶ 10-16, ECF No. 123-30). Allowing Plaintiff to work unvaccinated posed an undue hardship on Defendants. Petersen, 2025 WL 2503128, at *7.

### 2. Operational Burdens

#### a. Allowing Unvaccinated Employees To Work On Aircraft Created An Unreasonable Risk Of Continued Operational Disruptions

The Hawaiian Defendants were negatively affected by the COVID-19 pandemic and were forced to cancel flights and lost revenue due to employee illness. (Snook Decl. at ¶¶ 6, 8, attached to Def.'s CSF, ECF No. 123-32). Chief Operations Officer Jon Snook stated that there was continued concern during the pandemic of possible outbreaks and further operational disruption. (Id. at ¶¶ 4-5).

Defendant Hawaiian Airlines, Inc.'s routes were all to or from locations in the Hawaiian Islands. (Id. at ¶ 4). Crew

shortages were a major concern because of the location in Hawaii. (Id.)  Defendants had a harder time than major network carriers in diverting aircraft and personnel from other locations.  (Id.) Pilot staffing was limited and any outbreak of COVID-19 cases had significant operational impact on the Defendants.  (Id. at ¶ 5).

Allowing Plaintiff Brennan to fly unvaccinated posed a substantial risk of further operational disruption.  Pilot and crew availability were a constraint on Defendant Hawaiian Airlines, Inc.'s ability to fly and they had already faced issues with outbreaks of COVID-19 among co-workers that caused operational disruption and canceled flights.  (Kobayashi Decl. at ¶ 9, ECF No. 123-20; Snook Decl. at ¶ 6, ECF No. 123-32). Allowing unvaccinated pilots to fly their aircraft and interact with their other employees would have created a risk of further operational disruptions.

   **b.** **Following The Announcement Of The Vaccine Requirement, COVID-19 Continued To Surge In Hawaii**

There is no dispute that outbreaks of COVID-19 cases continued in Hawaii following the announcement of the Hawaiian Defendants' vaccination policy. (Hawaii Department of Health Press Release entitled, "HAWAII SURPASSES 10,000 ACTIVE COVID-19 CASES," dated August 29, 2021, attached as Ex. JR-2 to Def.'s CSF, ECF No. 123-3; Hawaii Department of Health Press Release

entitled, "SURGING COVID-19 CASE COUNTS & TEST VOLUME FORCE
CHANGES TO DATA REPORTING AND CASE INVESTIGATION," dated January
15, 2022, attached as Ex. JR-3 to Def.'s CSF, ECF No. 123-4).

Allowing unvaccinated employees to potentially spread
illness during the height of the COVID-19 pandemic constituted an
undue hardship because the Hawaiian Defendants "could not afford
to have substantial numbers of [their employees] on sick leave."
Petersen, 2025 WL 2503128, *8.

   c.   **Allowing Employees To Work On Aircraft
        Unvaccinated Was Not In Compliance With
        Federal And State Law And Public Health
        Guidelines**

The Hawaiian Defendants were also concerned that allowing
Plaintiff to fly unvaccinated and unmasked would violate the law.
See Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 830-
31 (9th Cir. 1999) (explaining that an employer is not liable
under Title VII when accommodating an employee's religious
beliefs would require the employer to violate federal or state
law).

The President of the United States, the Governor of the
State of Hawaii, the U.S. Transportation Safety Agency, and the
U.S. Centers for Disease Control had each issued orders requiring
masks to be worn on public transportation, in airports, and on
aircraft.  (Eighteenth Proclamation Related to the COVID-19
Emergency, dated February 12, 2021, attached as Ex. JR-11 to

Def.'s CSF, ECF No. 123-12; Executive Order 13998, attached as
Ex. JR-4 to Def.'s CSF, ECF No. 123-5; CDC Order titled,
"Requirement for Persons to Wear Masks While on Conveyances and
at Transportation Hubs," 86 Fed. Reg. 8025-30, dated Feb. 1,
2021, attached as Ex. JR-15 to Def.'s CSF, ECF No. 123-16; TSA
Press Released dated January 31, 2021, attached as Ex. JR-5 to
Def.'s CSF, ECF No. 123-6; TSA Press Release dated April 30,
2021, attached as Ex. JR-6 to Def.'s CSF, ECF No. 123-7; Guidance
for Federal Contractors and Subcontractors, dated November 10,
2021, attached as Ex. WJ-1 to Def.'s CSF, ECF No. 123-24).

On September 9, 2021, President Biden signed Executive Order
14042, known as the Federal Contractor Mandate, which required
contractors such as Defendants to ensure that their employees
were vaccinated for COVID-19 except in limited circumstances.
(Declaration of Senior Director of Leave Management Willard
Jackson ("Jackson Decl.") at ¶ 3, attached to Def.'s CSF, ECF No.
123-23; Guidance for Federal Contractors and Subcontractors,
dated November 10, 2021, attached as Ex. WJ-1 to Def.'s CSF, ECF
No. 123-24).  When vaccination was not possible, masking and
social distancing were required in order to comply with the
Federal Contractor Mandate.  (Id.; Def.'s CSF at ¶ 7, ECF No.
123).

The Defendants' vaccination policy ameliorated operational
risks by ensuring compliance with federal and state orders.

(Kobayashi Decl. at ¶ 3, ECF No. 123-20; Jackson Decl. at ¶ 4, ECF No. 123-23).

Plaintiff Brennan testified at his deposition that he refused to comply with the vaccination policy and he also refused alternatives such as testing for COVID-19.  (Brennan Depo. at p. 111, ECF No. 123-2).  Plaintiff Brennan also refused to wear a mask at all times during his employment, stating he refused to wear a mask during training and refused to wear a mask on the flight deck.  (Pl.'s Request for Reasonable Accommodation dated Oct. 7, 2021, attached as Ex. WJ-3, ECF No. 123-26).

Allowing Plaintiff to fly unvaccinated and without proper social distancing or mask wearing would have caused Defendants an undue hardship because Defendants would have been in violation of both state and federal regulations.  <u>Sutton</u>, 192 F.3d at 830-31.

### 3.   **Financial Burdens**

As explained in <u>Petersen</u>, financial burdens such as the loss of a lucrative contract are "a textbook economic hardship" and costs that constitutes an undue hardship for purposes of Title VII.  <u>Petersen</u>, 2025 WL 2503128, *8 (citing <u>Lavelle-Hayden v. Legacy Health</u>, 744 F.Supp.3d 1135, 1151 (D. Or. 2024)).

Travel restrictions and stay-at-home orders severely impacted the airline industry during the COVID-19 pandemic.  (Snook Decl. at ¶ 8, ECF No. 123-32).  Between 2020 and 2022, the

Hawaiian Defendants lost approximately $896,000,000.00 dollars
and took on over $1,000,000,000.00 dollars in debt.  (Id.;
Hawaiian Holdings, Inc.'s Form 10-K filed with the U.S.
Securities and Exchange Commission, dated Feb. 15, 2023, attached
as Ex. JS-1 to Def.'s CSF, ECF No. 123-33; Hawaiian Holdings,
Inc.'s Form 8-K filed with the U.S. Securities and Exchange
Commission, dated Feb. 4, 2021, attached as Ex. JS-2 to Def.'s
CSF, ECF No. 123-34).

The Hawaiian Defendants suffered significant financial
losses and faced continued risks of further financial hardship.
The Hawaiian Defendants reviewed their policies and procedures in
an attempt to minimize financial loss during the pandemic.
(Kobayashi Decl. at ¶ 3, ECF No. 123-20).  Unvaccinated employees
and absenteeism imposed real and substantial costs to the
Hawaiian Defendants and also threatened real costs to the
community.  Petersen, 2025 WL 2503128, *8.

The Hawaiian Defendants also faced potential loss of federal
government contracts if they failed to comply with the Federal
Contractor Mandate.  "During the pandemic, Hawaiian's contracts
with the federal government, including contracts with the
Department of Defense and the U.S. Postal Service, were a
critical source of revenue for the company."  (Snook Decl. at ¶
11, ECF No. 123-32).  "Hawaiian's financial survival during the
pandemic depended on its status as a federal contractor."  (Id.)

As explained earlier, Plaintiff refused to comply with the
vaccination policy, was unable to socially distance as a pilot,
and also refused to wear a mask at all times aboard the aircraft.
Plaintiff stated in his appeal of the denial of his requests for
accommodation that he rejected masks, tests, and the vaccine.
(E-mail from Lars Brennan to Robin Kobayashi dated Nov. 2, 2021,
attached as Ex. WJ-6 to Def.'s CSF, ECF No. 123-29).

The Hawaiian Defendants were concerned that any potential
accommodation for Plaintiff, especially without masking, would
jeopardize its contract with the United States Government
pursuant to the Federal Contractor Mandate. (Kobayashi Decl. at ¶
14, ECF No. 123-20).  Allowing Plaintiff to work on the aircraft
without vaccination and without masking and social distancing
would have been in violation of the Federal Contractor Mandate.
Plaintiff does not dispute this fact.  (Def.'s CSF at ¶ 7, ECF
No. 123; Pl.'s CSF at ¶ 7, ECF No. 131).

The Hawaiian Defendants have pointed to several substantial
costs of accommodating Plaintiff's requested vaccine exemption—
the health and safety of their own employees and the public, the
risk to the operations and the cost of widespread absences, and
the potential loss of lucrative contracts with the United States
federal government.  The Hawaiian Defendants also provided
unrebutted medical evidence that showed the inadequacy of
masking, testing, and social distancing as alternatives.  There

are no disputes of material fact that the Hawaiian Defendants could not reasonably have accommodated Plaintiff without undue hardship.  See <u>Groff</u>, 600 U.S. at 469; <u>Petersen</u>, 2025 WL 2503128, *9.

Defendants' Motion for Summary Judgment as to Count I for Failure to Accommodate Plaintiff's Religious Beliefs (ECF No. 122) is **GRANTED.**

## II.  <u>Plaintiff's Claims For Disability Discrimination Based On Failure To Accommodate</u>

Title I of the ADA prohibits employment discrimination against a qualified individual because of the disability of such individual.  42 U.S.C. § 12112(a).

To demonstrate a prima facie claim pursuant to the Americans With Disabilities Act, Plaintiff must establish:

(1)  he is disabled within the meaning of the Americans With Disabilities Act;

(2)  he is a qualified individual who can perform the essential functions of his job either with or without reasonable accommodations; and,

(3)  he suffered an adverse employment action because of his disability.

<u>Samper v. Providence St. Vincent Med. Ctr.</u>, 675 F.3d 1233, 1237 (9th Cir. 2012) (citing 42 U.S.C. § 12112(a), (b)(5)(A)).

The same framework is used to analyze disability discrimination claim pursuant to Haw. Rev. Stat. § 378-2. <u>Gandolfo v. Avis Budget Group, Inc.</u>, 2024 WL 327534, *9 n.14 (D.

Haw. Jan. 29, 2024).

If a defendant establishes a prima facie ADA claim, the
burden shifts to the defendant who may invoke affirmative
defenses: (1) that the accommodation "would impose an undue
hardship on the operation of the business" or (2) that the
plaintiff would "pose a direct threat to the health or safety of
other individuals in the workplace." 42 U.S.C. §§
12112(b)(5)(A), 12113(b); see Echazabal v. Chevron USA, Inc., 336
F.3d 1023, 1028 (9th Cir. 2003).

A direct threat under the ADA is a significant risk of
substantial harm to the health or safety of the individual or
others that cannot be eliminated or reduced by reasonable
accommodation. Echazabal, 336 F.3d at 1028 (citing 29 C.F.R. §
1630.2(r)). "[T]he views of public health authorities, such as
the U.S. Public Health Service, CDC, and the National Institutes
of Health, are of special weight and authority." Bragdon v.
Abbott, 524 U.S. 624, 650 (1998).

## A.  Disabled

A disability is "a physical or mental impairment that
substantially limits one or more major life activities of [an]
individual." 42 U.S.C. § 12102(1)(A).

The Court assumes, without deciding, that Plaintiff was
disabled within the meaning of the Americans With Disabilities

39

Act.

## B.  Qualified Individual

To determine if an individual is a qualified individual for a position, the Court examines if the individual satisfied the requisite skill, experience, education, and other job-related requirements of the position.  42 U.S.C. § 12111(8).

### 1.  Plaintiff Began Medical Leave Of Absence On September 23, 2019

On February 4, 2016, Plaintiff was hired by Defendant Hawaiian Airlines, Inc. as a First Officer pilot.  (Def.'s CSF ¶ 18, ECF No. 123; Pl.'s CSF at ¶ 18, ECF No. 131).

On September 23, 2019, Plaintiff underwent emergency open heart surgery to replace his aortic valve.  (Brennan Depo. at p. 62, ECF No. 123-2).  Plaintiff went on medical leave on the same date.  (Id.)

Plaintiff did not have medical clearance from the Federal Aviation Administration for nearly two years.  (Id. at p. 72).

Plaintiff was required to be re-qualified to fly as a pilot for Defendant Hawaiian Airlines, Inc. following his long medical absence.  (Clark Decl. at ¶ 7, ECF No. 123-35; Brennan Depo. at p. 72, ECF No. 123-2).

In July 2021, Plaintiff received clearance from the Federal Aviation Administration that allowed him to schedule mandatory

re-qualification training with Defendant Hawaiian Airlines, Inc.
(Clark Decl. at ¶ 8, ECF No. 123-35; Brennan Depo. at p. 73, ECF
No. 123-2).  Plaintiff was scheduled to begin re-qualification on
November 15, 2021.

### 2.   Plaintiff Was Not "Fit To Fly" When He Sought Accommodation From Defendants' Vaccination Policy

Plaintiff began suffering physical impairments beginning in
the summer of 2021 prior to submitting requests for accommodation
from the Hawaiian Defendants' vaccination policy.  (Zeff Depo. at
p. 31, ECF No. 123-19).  Plaintiff's naturopath medical provider,
Jared Zeff, N.D., examined Plaintiff in October 2021.  (Id. at
pp. 30-33).  Dr. Zeff testified that Plaintiff experienced
negative symptoms starting in the summer of 2021.  (Id.)

According to Plaintiff's doctor, Plaintiff experienced
"weak[ness], fever, loss of taste for 10 days two months [prior
to October 2021].  Numbness when first noticed working on house
in Oregon City.  Got up from sitting, hard time moving left leg.
Had to swing it to get it to work.  Lasted a couple of minutes,
very strange."  (Id.)

Dr. Zeff stated that his medical records from October 2021
stated that Plaintiff reported:

> numbness and weak right arm and hand, a bit one week
> after the leg incident.  Since then initial time and a
> few times when I feel like I'm losing strength in arms
> or legs.  Feels light, like arms could float.  Legs
> can feel the same.  Since COVID dizziness, bouts when

41

> I have to grab – to grab on and would – and world is
> spinning at least once a week.  Numbness is both arms,
> both legs.  Has had muscle spasms in back – numerous
> times in back.

(Id. at pp. 31-32).

In his deposition taken on April 12, 2024, Plaintiff admits that his medical conditions prevented him from performing the essential functions of the pilot position and that no accommodation was possible.  (Brennan Depo. at pp. 184-85, 189-90, ECF No. 123-2).

### 3.    Plaintiff Did Not Inform The Hawaiian Defendants That He Could Not Perform The Essential Functions Of His Position Until After His Accommodation Requests Were Denied

Plaintiff did not inform the Hawaiian Defendants that he was unable to fly at the time he sought exemption from vaccination. (Brennan Depo. at p. 189, ECF No. 123-2).

Plaintiff did not inform the Hawaiian Defendants that he was unable to fly until after the denial of his accommodations requests in November 2021.  (Clark Decl. at ¶ 8, ECF No. 123-35).

On November 10, 2021, Plaintiff submitted a request for a Medical Leave of Absence due to his inability to perform the essential functions as a pilot, which was granted.  (Id.)

**4.    There Are No Genuine Disputes Of Material Fact
That Plaintiff Was Unable To Perform The Essential
Functions Of A Pilot When He Sought Accommodation
From Defendants**

The cause of Plaintiff's negative symptoms that prevented
him from performing the essential functions of his position are
not relevant to the denial of his accommodation.  It is the
plaintiff's burden of proof to establish that he was a qualified
individual and that there was a reasonable accommodation
available that would have enabled the plaintiff to perform the
job.  Snapp v. United Trans. Union, 889 F.3d 1088, 1102 (9th Cir.
2018) (citing Dark v. Curry Cnty., 451 F.3d 1078, 1088 (9th Cir.
2006)).

Here, Plaintiff admitted in his deposition that there were
no accommodations that would have allowed him to perform the
essential functions of his pilot position when he sought
exemption from the Defendants' vaccination policy.  (Brennan
Depo. at pp. 184-85, ECF No. 123-2).

Plaintiff cannot meet his burden of proof to establish that
he was a qualified individual who was capable to perform the
essential functions of his position with Defendant Hawaiian
Airlines, Inc.  Bates v. United Parcel Serv., Inc., 511 F.3d 974,
990-91 (9th Cir. 2007) (en banc).

Defendants are entitled to summary judgment on Plaintiff's
claim for failure to accommodate his disability because there are

43

no genuine disputes of material fact that Plaintiff was unable to perform the essential functions of the pilot position.  See Anthony v. Trax Int'l Corp., 955 F.3d 1123, 1134 (9th Cir. 2020) (finding defendant was entitled to summary judgment because it was undisputed that plaintiff was not qualified to perform the job).

### C.   Undue Hardship

Even if Plaintiff could demonstrate that he was a qualified individual, an employer is not required to accommodate an employee if it will pose an undue hardship.  Dark, 451 F.3d at 1088; see E.E.O.C. v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615, n.7 (9th Cir. 1988).

The record demonstrates that Plaintiff was granted an accommodation in the form of a medical leave of absence.  On November 10, 2021, Plaintiff submitted a request for a Medical Leave of Absence due to his inability to perform the essential functions as a pilot.  (Clark Decl. at ¶ 8, ECF No. 123-35).  Plaintiff's Medical Leave of Absence request was granted.  (Id.)

No additional accommodation was required.  Indefinite paid leave is not a reasonable accommodation.  Makor v. Burlington No. Santa Fe Railway Co., 680 Fed. Appx. 542, 544 (9th Cir. 2017); Larson v. United Natural Foods West, Inc., 518 Fed. Appx. 589, 591 (9th Cir. 2013) (citing Wood v. Green, 323 F.3d 1309, 1314

44

(11th Cir. 2003) (holding that requesting an indefinite leave of absence is unreasonable as a matter of law)).

As explained above, there are no disputes of material fact that the Hawaiian Defendants could not have allowed Plaintiff to fly their aircraft unvaccinated without undue hardship given the health and safety costs, operational burdens, and financial burdens on the Defendants.  See 42 U.S.C. § 12111(10); Snapp, 889 F.3d at 1095.

### D.    Direct Threat To Health And Safety

The record also demonstrates that allowing Plaintiff to fly with his medical conditions and unvaccinated would pose a "direct threat" to the safety of others.  42 U.S.C. § 12113(b).

There is no liability under the ADA if an employer subjects an employee to an adverse employment action because the individual poses a direct threat to the health or safety of other individuals in the workplace.  See Dark, 451 F.3d at 1091; Gemmrig v. Asante Three Rivers Med. Ctr., LLC, 2025 WL 2555337, *9 (D. Or. Sept. 5, 2025) (finding employer was entitled to summary judgment where evidence demonstrated that an employee who refused to be vaccinated for COVID-19 posed a direct threat to health and safety of others).

There can be no dispute that at the time of Plaintiff's accommodation request in October 2021, allowing Plaintiff to fly

45

as a pilot while unvaccinated and with significant medical issues including numbness, dizziness, and vertigo would have posed a significant risk of substantial harm to the health or safety of others.  Echazabal, 336 F.3d at 1028; Bragdon, 524 U.S. at 650.

Defendants' Motion for Summary Judgment as to Count II for Failure to Accommodate Plaintiff's Disability (ECF No. 122) is **GRANTED.**

## CONCLUSION

Defendant Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc.'s Motion for Summary Judgment (ECF No. 122) is **GRANTED.**

Defendants' Motion for Summary Judgment as to Count I for Failure to Accommodate Plaintiff's Religious Beliefs (ECF No. 122) is **GRANTED.**

Defendants' Motion for Summary Judgment as to Count II for Failure to Accommodate Plaintiff's Disability (ECF No. 122) is **GRANTED.**

There are no remaining claims or parties in this case.

The Clerk of Court is **ORDERED** to enter Judgment in favor of Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. and to **CLOSE THE CASE.**

IT IS SO ORDERED.

Dated: September 29, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Lars A. Brennan v. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., Civ. No. 22-00481 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 122)**

47